GEORGE KEITH v. THE SANDS & MAXWELL LUMBER
COMPANY.

*Principal and agent—Withdrawal of authority—Notice.*

Where, pending negotiations by wire and mail for the purchase of
cedar posts, the vendor wrote to the vendee that if certain
posts were not sold he could have them at a stated price, and
that he would know by a certain date if the posts were sold,
such letter amounted in law to a withdrawal of said posts
from sale until the date named, and was a sufficient notice to
the vendee that he must deal with the vendor personally; and
a sale by an agent in charge of the posts, made after such
date, is held not binding upon the principal.

Error to Oceana. (Dickerman, J.) Argued June 5,
1891, Decided October 30, 1891.

*Assumpsit.* Defendant brings error. Reversed. The
facts are stated in the opinion.

*W. E. Ambler* (*Montgomery & Bundy,* of counsel), for
appellant.

*Montgomery & Lee,* for plaintiff.

MORSE, J. This is a suit for damages for breach of an
alleged contract on the part of the defendant to sell the
plaintiff 40,000 paving posts. The plaintiff recovered
judgment in the Oceana circuit court for $1,558.

The facts shown upon the trial are substantially as
follows: The plaintiff resided in Lansing, Mich., and is
a jobber and contractor. In the summer of 1887 he was
engaged in paving at Michigan City, Ind., and had a
contract there for laying down a cedar-block pavement.
He went to Pentwater, Mich., the location of the business
office of the defendant corporation, looking for cedar,

and there saw both Sands and Maxwell, the business managers of the defendant, who, with their wives, seemed to be the corporation. Maxwell showed him a lot of cedar posts at Pentwater, and t hey had some talk about them, but plaintiff did not buy, nor was there any price set upon them. In the conversation plaintiff testifies that Maxwell spoke about the defendant having some posts at Prentis Bay, and said:

"I don't know whether the posts at Prentis Bay are sold or not. I have not heard from our man up there in some time."

This talk is not denied by Maxwell. This was in the early part of July. Plaintiff went from Pentwater to other localities looking for cedar. On the 23d day of July, 1887, he wrote the following letter:

"SANDS & MAXWELL,
 "Pentwater, Mich.,—

"*Gents:* In accordance with the understanding when I was at your place, I now make you this proposition for cedar posts, delivered on dock at Michigan City, Indiana: Will give you sixteen cents for posts five inches and upwards, or seven dollars per cord. After the first cargo, I am satisfied that I can do better by you on inspection than you can do in Chicago. The first lot would have to be about Chicago inspection. If you accept my proposition, telegraph me at once, so I may stop further negotiating. If you furnish by the cord, can use as small as four inches.

"Yours, etc., GEORGE KEITH."

Receiving no answer to this letter, plaintiff, on the 28th of July, sent a telegram as follows:

"Have you answered letter? Will you give a price on cedar?"

In answer to this, Keith, on the 29th, received in the same mail, at Lansing, two letters, which read, respectively, as follows:

"PENTWATER, MICH., 7–28–87.
"GEORGE KEITH, Lansing,—

"*Dear Sir:* Your telegram received. We have sold our posts at eighteen and a half cents each. All we have. None for sale.

"S. M. L. Co."

"PENTWATER, MICH., July 28, 1887.
"GEORGE KEITH, Lansing,—

"*Dear Sir:* If posts at Prentis Bay are not sold, you can have them at fourteen cents over the rail. We will know Monday, the 1st.

"Respectfully, SANDS & MAXWELL."

It appears from the testimony of Mr. Sands that he wrote the last letter in the morning, and that Maxwell wrote the other, he thinks, afterwards, and that they received mail between the writing of the letters. It also appears that Mr. Maxwell testified upon a previous trial of this case that the letter written by him referred to the posts at Pentwater. The 29th of July was on Friday. Without replying to these letters, Keith started immediately for Prentis Bay, and reached there on the evening of Tuesday, August 2. Here he found Robert Hyde in charge of the defendant's property and affairs, and on the next day bargained with him for the purchase of 40,000 cedar posts, paid him $100 down, and took the following receipt:

"PRENTIS BAY, MICH., August 3, 1887.
"Received of George Keith the sum of one hundred dollars on account of 40,000 peeled paving posts, five inches and upwards at smaller end, and eight feet long, for which he is to pay, in a manner satisfactory to our firm at Pentwater, eleven cents and one half each, delivered over rail of vessel. Such portion of said 40,000 posts as may be under five inches, and not less than four inches, he is to pay eight cents each for.
"SANDS & MAXWELL LUMBER Co. *per James Grover.*"

Mr. Hyde and plaintiff dictated the receipt to Grover, who was a clerk of the defendant, and Hyde directed

Grover to sign it as he did. Hyde also wrote a telegram, and handed it to Keith to send to Sands & Maxwell when he reached Cheboygan, on his way home. This telegram was as follows:

"PRENTIS BAY, Aug. 3, 1887.
"SANDS & MAXWELL LUMBER Co.,
                    "Pentwater:
  "Have sold George Keith 40,000 paving posts, at eleven and one-half cents each over rail. Payment to be made satisfactory to you."

Keith did not send the telegram, for the reason, as he claims, that he was delayed in reaching Cheboygan, and when he got there found that Hyde had preceded him. In the conversation between Keith and Hyde, before the posts were purchased, Hyde stated to Keith that "he had a letter from the home company saying that they expected to sell them at fourteen cents apiece." Keith testifies that he answered, "I presume I am the man they are expecting to buy, as I have a letter in my pocket." Hyde testifies that he told Keith that Sands & Maxwell had been figuring with some parties on prices to sell their posts, and Keith replied that he was the man they were figuring with. On July 30, 1887, the defendant made a contract with Hackley & Hume, of Muskegon, by which it sold to them one cargo of these paving posts at Prentis Bay, with an option for the balance, up to 40,000. Hackley & Hume did not, however, take but one cargo, about 2,200. On the same day defendant wrote to Hyde of this sale, but he did not receive it until after his agreement with Keith. The defendant refused to deliver any posts to plaintiff, and he brought this suit.

It is contended, in the first place, by defendant that the letter, one of the two received in the same mail by plaintiff, stating that all its posts were sold, was an

unequivocal revocation of any authority which Hyde might previously have had to negotiate a sale, and a complete notice to plaintiff of such revocation. If this were so, it would end the case; but we think that the plaintiff had a right to infer that this letter referred to the posts at Pentwater, and that the other letter was the latter one; and it would seem from all the evidence in the case that it did refer to the Pentwater posts, and to them alone.

It is also contended that, even if it be assumed that this letter was written first, and referred to the Pentwater posts, still the letter stating, " If posts at Prentis Bay are not sold, you can have them at fourteen cents over the rail; we will know Monday, the 1st,"—was full notice of the withdrawal of the posts from the market until the 1st day of August, and also notice that no subordinate agent could sell such posts pending the negotiations between Sands & Maxwell and the parties referred to in such letter; that it was not fair dealing or open to the plaintiff on the receipt of that letter to start at once for Prentis Bay to deal with Hyde without the knowledge of Sands & Maxwell, and without informing himself whether they had in the meantime, before his bargain with Hyde, closed the sale referred to in such letter. On the other hand, the plaintiff's counsel claim that the letter did not disclose to plaintiff that they were negotiating with any one else for the sale of these posts; that he supposed, and had a right to suppose, that they were waiting to hear from Hyde to find out whether he had sold the posts or not.

The circuit judge left it to the jury to determine what the effect of this letter was upon the plaintiff under all the circumstances of the case. In this we are all agreed he was in error. As a matter of law, this letter was a withdrawal of these posts from sale to the plaintiff until

Monday, August 1, and a sufficient notice to him that he must deal with defendant in relation to them. He was not authorized to start at once to Prentis Bay, and open negotiations with their agent there; and, if this had been permissible, he could not have made a contract with such agent, binding upon defendent, for less than 14 cents, in view of the letter he had received.

As this virtually disposes of the case, we shall not enter upon a discussion of the other errors assigned. The circuit judge should have directed a verdict for the defendant.

The judgment is reversed, and a new trial granted, with costs of both courts to defendant.

The other Justices concurred.